# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY PHILLIPS, | Civil No. 3:17-cv-1591 |
| Plaintiff | (Judge Mariani) |
| v. | |
| SUPERINTENDENT KERESTES, *et al.*, | |
| Defendants | |

## MEMORANDUM

Plaintiff Anthony Phillips ("Phillips"), an inmate who was housed at all relevant times at the State Correctional Institution at Mahanoy, in Frackville, Pennsylvania ("SCI-Mahanoy"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Superintendent John Kerestes, Deputy Superintendent Hugh Beggs, Lieutenant Kevin Clark[1], Lieutenant Charles Butts, Lieutenant Ryan Reese, Unit Manager Joseph Holly, Correctional Officer Eugene Kabilko, Correctional Officer James Murphy, Correctional Officer Thomas Connors, and Corrections Food Service Instructor Damian Joy. (*Id.*).

Presently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 26). The motion is ripe for resolution and, for the reasons set forth below, the motion will be granted in part and denied in part.

---

[1] Although named as a Defendant, the complaint contains no factual allegations against Lieutenant Kevin Clark. (*See* Doc. 1).

I. **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## II. Statement of Undisputed Facts[2]

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. *See id.* Although Phillips failed to file a response to Defendants' statement of material facts, he filed a brief in opposition to Defendants' motion wherein he disputes certain facts set

On September 16, 2015, at approximately 8:00 a.m., a use of force incident occurred between Phillips and Defendants Kabilko, Reese, and other unnamed correctional officers outside the inmate dining hall. (Doc. 27, Statement of Material Facts, ¶ 2). The incident began inside the dining hall. While in the dining hall, Phillips requested a diet meal, but he did not have a diet card. (*Id.* at ¶ 3). At this point, Defendant Kabilko called to Defendant Reese for assistance, and they escorted Phillips out of the dining hall. (*Id.* at ¶¶ 4-5). Defendants contend that video of the incident shows Phillips refusing orders and backing away from the officers. (*Id.* at ¶ 6). Defendant Joy and several other officers were then called to the area to help with a noncompliant inmate. (*Id.* at ¶ 7). Phillips maintains that he was not threatening anyone, and that it is unreasonable to conclude that by backing away from officers he placed them in fear. (Doc. 32, ¶¶ 7, 10, 32).

Pursuant to the Use of Force Policy and Procedures Manual, DC-ADM 201, the Department of Corrections ("DOC") authorizes use of force against an inmate when a staff member reasonably believes such force is necessary to accomplish any of the following objectives: (1) protection of self or others; (2) protection of property from damage or destruction; (3) prevention of an escape; (4) recapture of an escapee; (5) prevention of an act of crime; (6) effect compliance with the rules and regulations when other methods of control are ineffective or insufficient; and/or, (7) protection of the inmate from self-inflicted

---

forth by the Defendants. (*See* Doc. 32).

harm. (Doc. 27, ¶ 8). When force is used, the least amount of force the staff member reasonably believes is necessary to achieve the authorized purpose is to be used and the use of force will stop once control is achieved. (*Id.* at ¶ 9). Use of force is applied in accordance with the force continuum, unless the acting staff member reasonably believes the situation requires immediate escalation to a greater degree of force to accomplish any of the above-mentioned objectives. (*Id.* at ¶ 10). The following components sequentially make up a force continuum: (1) show of force; (2) control techniques, oleoresin capsicum, Electronic Body Immobilizing Device ("EBID"), and/or Pepperball System; (3) chemical munitions other than oleoresin capsicum; (4) active counter measures (strikes against the inmate) and/or Specialty Impact Munitions; and, (5) firearms. (*Id.* at ¶ 11).

Once Phillips was subdued and he was placed in restraints, he was escorted to the Restricted Housing Unit ("RHU") to be treated by medical. (*Id.* at ¶ 12). Phillips' medical injury report notes that the examining nurse treated small abrasions on his right hand middle and ring fingers, and suggested that he follow-up with a sick call slip. (*Id.* at ¶ 13).

On September 17, 2015, a physician assistant treated Phillips. (*Id.* at ¶ 14). Phillips was informed that his finger looked dislocated, and an x-ray would be ordered. (*Id.* at ¶ 15). On September 18, 2015, Phillips returned to medical and was advised that his finger was dislocated. (*Id.* at ¶ 16). Medical staff wrapped his finger in a splint. (*Id.* at ¶ 17).

Phillips contends that more than a *de minimis* amount of force was used against him.

5

(Doc. 32, ¶ 5). Phillips claims that he was punched him in the eye, his finger was dislocated, and an EBID was twice used on him. (*Id.* at ¶¶ 10-11). He further contends that there is a genuine issue as to whether Defendant Reese punched him in the eye, and whether Defendant Kabilko was involved in the use of force incident. (*Id.* at ¶¶ 11-12, 19-20).

Phillips was issued a misconduct in relation to the incident. (Doc. 27, ¶ 18). On October 5, 2015, Phillips filed a grievance related to the use of force event, and allegations that he was denied access to medical care. (*Id.* at ¶ 19).

While at SCI-Mahanoy, Phillips never filed a grievance related to receiving services for a qualified disability, and never filed any requests for services under the Americans with Disabilities Act ("ADA"). (*Id.* at ¶ 20). Phillips asserts that he is not required to seek a formal accommodation under the ADA. (Doc. 32, ¶ 34). He further asserts that his mental health status should be a factor in determining whether Defendants should have used force against him. (*Id.* at ¶¶ 14-18, 30).

III. <u>Discussion</u>

    A. **Eighth Amendment Claims**

        1. *Excessive Force Claim*

Phillips asserts that Defendants Kabilko, Reese, and Joy used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment protects

prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)); *see also* U.S. CONST. amend. VIII. To prevail on an Eighth Amendment claim, an inmate must show: (1) a deprivation that is objectively sufficiently serious; and, (2) "a sufficiently culpable state of mind" of the defendant official. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

An Eighth Amendment challenge asserting excessive force is subject to a malicious and sadistic standard. *See Zimmerman v. Schaeffer*, 654 F.Supp.2d 226, 247 (M.D. Pa. 2009) (citing *Hudson*, 503 U.S. at 6-7). The inquiry under this standard is whether prison officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (citations and quotations omitted); *see also Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000). In an excessive force case, a prisoner need not show significant injury; however, *de minimis* uses of physical force are insufficient to establish an Eighth Amendment violation. *Hudson*, 503 U.S. at 9-10. Excessive force claims are typically based in emergency situations where prison officials must use force and act quickly and decisively to maintain or restore discipline. *See Hudson*, 503 U.S. at 6-7.

"Summary judgment in favor of a defendant is not appropriate 'if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000), quoting *Whitley*, 475 U.S. at 322. In *Giles v. Kearney*, 571 F.3d 315 (3d Cir. 2009), the Third Circuit reversed a district court grant of summary judgment on a prisoner's claim of excessive force where there was a genuine dispute of fact as to the necessity for the force, and a reasonable trier of fact could have concluded, based on the prisoner's testimony that he had been struck by prison guards even after he had ceased resisting, that the force used was excessive. *Giles*, 571 F.3d at 326-27. Furthermore, where events at issue have been captured on videotape, the court must consider that videotaped evidence in determining whether there is any genuine dispute as to material facts. *See Scott*, 550 U.S. at 380-81. The Court must view the facts in the light depicted by the videotape. *See id.* (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").

Accepting Phillips' assertions as fact, plainly a claim for excessive force has been made out. Defendants assert that the force used was necessary as Phillips was noncompliant with orders, and the use of force was within DOC policy limits. (Doc. 29, pp. 14-17). Defendants Kabilko, Reese, and Joy further argue that Phillips fails to state a claim against them because they lack personal involvement in the alleged wrongs. (*Id.*).

In Phillips' brief in opposition to Defendants' motion, he states that material factual disputes exist. (Doc. 32). Of note, he points out that disputes exist on the following issues related to the use of force incident: that more than a *de minimis* amount of force was used against him; that he was not threatening anyone and that it is unreasonable to conclude that by backing away from the officers, he placed them in fear; there is a genuine issue as to whether Defendant Reese punched him in the eye; that his mental health status should be a factor in determining whether Defendants should have used force; and that Defendant Kabilko was involved in the use of force incident. (Doc. 32, ¶¶ 5, 7, 10-12, 14-20, 30, 32). At this stage, the Court is to view the evidence and facts in the light most favorable to the plaintiff. Phillips asserts that the attack was malicious, that Defendant Reese punched him in the right eye, Defendants Kabilko, Reese, and Joy squeezed his testicles, locked his leg, and twisted his neck, an unknown officer twice used an EBID on his left side, and an unknown officer bent his left finger back until it snapped. (Doc. 1, ¶¶ 30-38). If true, Phillips' assertions that he was not resisting or disobeying orders would tend to show that the use of force and the use of an Electronic Body Immobilizing Device was unnecessary.

Defendants point to video surveillance footage of Phillips being escorted out of the inmate dining hall and the incident that immediately occurred outside the dining hall. (Doc. 29, pp. 7-8, 16). Defendants argue that this video contradicts Phillips' version of events because it shows him refusing orders and acting in an aggressive manner. (*Id.*). The video

shows that approximately twelve officers surrounded Phillips in a show of force and had to use control techniques to place him on the ground and apply handcuffs. Due to the amount of officers involved in the incident, the video does not clearly show the actions of each individual officer, and which officers allegedly inflicted injury on Phillips. The video further reveals that a nurse examined Phillips while he was in a restraint chair in the RHU. The nurse wiped a laceration over his right eye, applied steri-strips, and cleaned cuts on his elbow, side, and back, which is consistent with Phillips' claims that he was struck in the eye and an EBID was used on him.

The Court is unable to form an opinion on the nature and extent of Phillips' injuries and whether the force used during the incident was necessary. These questions are more appropriately resolved by the finder of fact and cannot be resolved at the current time. Where videotape evidence is susceptible to multiple reasonable interpretations or cannot clearly resolve the facts in dispute, as is the case here, summary judgment is inappropriate. *Patterson v. City of Wildwood*, 354 F. App'x 695, 698 (3d Cir. 2009)). Accordingly, Defendants' motion for summary judgment on the excessive force claim will be denied.

### 2. *Deliberate Indifference to Medical Needs*

Phillips asserts that Defendants Kabilko, Reese, Kerestes, Beggs, Butts, Murphy, and Connors denied him adequate medical care. (Doc. 1, ¶¶ 44, 50, 55, 57-66, 70, 74-77).

The Eighth Amendment's proscription against cruel and unusual punishment

requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th

Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

For purposes of Eighth Amendment medical claims, non-medical staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. *See, e.g., id.* at 236-37 (citing *Durmer*, 991 F.2d at 69); *Garvey v. Martinez*, No. 08- 2217, 2010 WL 569852, at *6-7

(M.D. Pa. 2010); *Hodge v. United States*, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007). Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

With respect to the Eighth Amendment medical claim against Defendants Kabilko, Reese, Kerestes, Beggs, Butts, Murphy, and Connors, Phillips fails to establish a viable claim. None of these Defendants are trained members of the medical staff subject to liability for an Eighth Amendment claim. Phillips has not presented any evidence that the Defendants provided him with medical care, or that any of the Defendants were aware that prison doctors or their assistants were mistreating, or not treating, him. Nor has Phillips presented any evidence that the Defendants were aware of or acquiesced in purported Eighth Amendment medical care violations. Because Phillips was under the regular care of medical experts, the non-medical Defendants were justified in believing that he was in capable hands. *See Spruill*, 372 F.3d at 236; *Durmer*, 991 F.2d at 69. The Court will grant Defendants' motion with respect to this claim.

### 3. *Denial of Food*

Phillips contends that Defendant Murphy denied him food on a single occasion while housed in the RHU. (Doc. 1, ¶ 56). As stated, the Eighth Amendment protects prison

13

inmates from cruel and unusual punishment. See *Farmer*, 511 U.S. at 832. However, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective and subjective test. See *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. A prisoner must also demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. *Id.*

Phillips alleges that the deprivation of food on one (1) occasion violated his Eighth Amendment rights. In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Hudson*, 503 U.S. at 8-9. The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose. *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002); see also *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) (holding a "substantial deprivation of food may be

sufficiently serious to state a conditions of confinement claim under the Eighth Amendment"); see also Talib v. Gilley, 138 F.3d 211, 214 (5th Cir. 1998) (stating that whether the deprivation of food falls below acceptable threshold of "minimal civilized measure of life's necessities" depends on the amount and duration of the deprivation). In the same way that an inmate relies on prison officials to provide appropriate medical care, see Estelle, 429 U.S. 97, and protection from assaults by other inmates, see Farmer, 511 U.S. 825, inmates rely on prison officials to provide them with adequate sustenance on a daily basis. Although the repeated and unjustified failure to do so amounts to a serious deprivation, the purported denial of a few single meals on various days is not of such magnitude as to rise to the level of a constitutional violation. See Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009), citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); see also Talib, 138 F.3d at 214 (concluding that "missing one out of every nine meals is hardly more than that missed by many working citizens over the same period" and therefore not "anything close" to a denial of a minimal measure of life's necessities). Phillips has failed to set forth any evidence sufficient for the Court to conclude that his Eighth Amendment conditions of confinement claim should proceed because he has failed to allege: (1) that the deprivation alleged was objectively, sufficiently serious; and (2) that any Defendant acted with deliberate indifference to an excessive risk to his health and/or safety as required by Farmer.

### B. Violation of Prison Policy

Phillips asserts that Defendants Kabilko, Reese, and Joy violated various DOC policies. However, Phillips' statement is unsupported, purely conclusory, and fails to state what prison policy was allegedly violated. Phillips has failed to provide any evidence to support his claim regarding the violation of prison policy. Moreover, "[a]n inmate does not have a viable Section 1983 claim based solely upon a prison official's failure to adhere to a prison regulation, directive, or policy statement." *Royster v. Beard*, 2007 U.S. Dist. LEXIS 71368, *12 (M.D. Pa. 2007) (citing *Elkin v. Fauver*, 969 F.2d 48 (3d Cir. 1992)). As such, Phillips' claim based solely upon the alleged failure to follow prison policies fails to state a claim upon which relief may be granted.

### C. Americans with Disabilities Act Claim

Phillips alleges that he is a qualified individual with a mental disability. (Doc. 1, ¶ 111). He claims that he was entitled to speak with a qualified mental health individual prior to force being used against him. (*Id.* at ¶ 112). Phillips further asserts that Defendant Holly was aware of his mental health status, and failed to place him on a more suitable unit for seriously mentally ill inmates. (*Id.* at ¶¶ 103, 105-106, 112).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

16

such entity." 42 U.S.C. § 12132. As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). However, the plain language of § 12132 applies only to public entities not individuals. *Yeskey v. Commonwealth of Pennsylvania*, 76 F. Supp.2d 572, 575 (M.D. Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). To the extent that Phillips is raising his ADA claim against Defendants in their individual capacities, this claim fails. The individually named Defendants do not qualify as public entities as defined by the ADA. Therefore, the ADA is inapplicable to the individually named Defendants.

Although Phillips cannot raise his ADA claim against the Defendants in their individual capacities, he can raise his ADA claim against them in their official capacities. To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion,

denial of benefits, or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132. In *Brown v. Pennsylvania Department of Corrections*, 290 F. App'x 463, 467 (3d Cir. 2008), the Third Circuit held that the inmate failed to allege facts sufficient to show that the prison denied him access to mental health treatment "by reason of" his alleged disabilities, which included mental health disabilities. The inmate alleged "that the prison *ignored* his alleged disabilities in order to justify his placement in the [segregation unit]—not that they placed him in the [segregation unit] because of discriminatory animus based on his alleged mental disabilities." *Brown*, 290 F. App'x at 467. The Third Circuit found that because the inmate failed to allege that he was placed in the segregation unit based on his protected status as mentally disabled, his ADA claim failed. *Id.* Here, Phillips similarly asserts that Defendant Holly essentially ignored his disability and did not place him on a more suitable unit for mentally ill inmates. Based on the reasoning of the *Brown* Court, Phillips has failed to establish an ADA claim against Defendant Holly for failure to place him on a particular housing unit.

While Phillips has alleged that he is a qualified individual with a mental disability, he has not established that he has been excluded from participation in or denied the benefits of some prison service, program or activity, and he also has failed to establish that such exclusion, denial of benefits, or discrimination was by reason of his disability. Phillips has failed to present any evidence of the existence of a DOC "program, service, or activity" that

entitles an inmate to speak with a qualified individual prior to force being used against him. 42 U.S.C. § 12132. Consequently, the motion for summary judgment will be granted on the ADA claim.

## IV. Conclusion

For the reasons set forth above, Defendants' motion (Doc. 26) for summary judgment will be granted in part and denied in part. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August 20, 2019